888 A.2d 1266

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. WILLIAM
B. ECKEL, DEFENDANT–RESPONDENT.

Argued September 13, 2005—Decided January 10, 2006.

*Maura K. Tully,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

*Gilbert G. Miller,* Designated Counsel, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

*Sharon Bittner Kean,* on behalf of amicus curiae, Association of Criminal Defense Lawyers of New Jersey, relied upon her brief submitted in State v. Johnel D. Dunlap.

Justice LONG delivered the opinion of the Court.

The issue raised in this appeal is whether the police may conduct a warrantless search of an automobile as incident to an arrest after the occupants have been removed from the vehicle and are secured in police custody. Because the search incident to arrest exception to the warrant requirement was limned for two specific purposes—the protection of the police and the preservation of evidence—and because neither purpose can be advanced by searching the vehicle of a person who effectively is incapacitated, we hold that such a search is incompatible with Article I, Paragraph 7 of the New Jersey Constitution. To the extent *New York v. Belton,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.*2d 768 (1981), has concluded otherwise in interpretating the Federal Constitution, we respectfully part company with the United States Supreme Court.

I

On June 30, 2002, at around 3:20 p.m., while on routine patrol, Officer Douglas Whitten received a report of a stolen vehicle, described as a green Mercury Cougar bearing the license plate FTY1380. Earlier in the day, the owners of the vehicle, Mr. and Mrs. Sanfillipo, reported that the car had been stolen by their daughter, Dana, and that Dana's boyfriend, defendant William B. Eckel, also might be in the car. At the time, Officer Whitten knew that there was a warrant issued by Upper Township for Eckel's arrest based on failure to appear for municipal court dates.

Officer Whitten waited across the street from defendant's residence on Seashore Road and observed the green Mercury Cougar pulling out of the driveway. A young woman, later identified as Dana Sanfillipo, was at the wheel and defendant was in the front passenger seat. A male juvenile was sitting in the rear passenger

seat. Officer Whitten stopped the vehicle with the assistance of Sergeant Jack Beers.

When Officer Whitten approached the driver's side of the vehicle and asked Dana Sanfillipo for her license, registration and insurance documents, Sergeant Beers approached the passenger side and asked defendant to exit the car. Sergeant Beers informed defendant that he was under arrest on an outstanding warrant, placed him in handcuffs and put him in the rear seat of the patrol car, which was parked behind the Sanfillipo vehicle. Officer Whitten estimated that it took only "a couple of minutes" for Sergeant Beers to arrest defendant and place him in the back of the patrol car.

Officer Whitten then asked Dana Sanfillipo to exit the vehicle and step to the rear, off to the side of the road. During a subsequent conversation with Officer Whitten, Dana asked permission to kiss defendant goodbye and give him the clothing he had left in the car. Officer Whitten told Dana to stay where she was and that he would retrieve the clothing. He testified that he would not let Dana go to the vehicle to retrieve defendant's clothes because it could have jeopardized the officers' safety.

Officer Whitten went to the front passenger side of the vehicle, where the door was open, and began picking up the clothing from the floor by the passenger seat. Underneath the clothing, Officer Whitten observed a phone book with some "green vegetation and stems" lying on top that he believed to be marijuana. The officer also observed an open box of "Philly Blunt"[1] cigars behind the passenger seat, which contributed to his belief that the vegetation was marijuana.

---

[1] "A blunt is an inexpensive cigar, typically a 'Philly Blunts' brand cigar, that has been split open and emptied of tobacco. Marijuana is substituted for the removed tobacco, and the exterior tobacco leaf of each cigar is used to rewrap the new contents." National Institute on Drug Abuse, *Assessing Drug Abuse Within and Across Communities,* http://www.drugabuse.gov/DESPR/Assessing/AppendixH1.html (last visited Nov. 30, 2005).

Officer Whitten then retrieved a pair of blue denim shorts from behind the passenger seat. The officer found a softball-sized baggie rolled up in the shorts and opened it.[2] Inside, there was an additional baggie, inside of which were several different items, including a clear plastic baggie containing a white powdery substance, an electronic scale with white residue on the tray, and several different types of small glassine bags. Officer Whitten suspected the white powder to be cocaine. He asked the juvenile to step out of the back seat of the car, and continued to search the passenger compartment. In between the rear seat and the door, Officer Whitten found a larger baggie containing green vegetation that he believed to be marijuana.

When questioned, the occupants all denied ownership of the suspected marijuana and cocaine found in the vehicle. Dana Sanfillipo indicated that the shorts might belong to her brother who also used the car.

Defendant and Dana Sanfillipo were charged with third-degree possession of a controlled dangerous substance, cocaine, in violation of *N.J.S.A.* 2C:35–10a(1) (count one), third-degree possession of a controlled dangerous substance, cocaine, with intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(3) (count two), and fourth-degree possession of a controlled dangerous substance, marijuana, with intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(12) (count three). There were no charges relating to the stolen vehicle because, at the scene, Mr. and Mrs. Sanfillipo indicated that they did not wish to press charges.

Defendant moved to suppress the evidence against him. The trial judge credited Officer Whitten's testimony that he entered the vehicle in response to a request by Dana Sanfillipo. The court concluded that, under the circumstances, Officer Whitten's entry

---

[2] Defendant's sole argument is directed to Officer Whitten's right to search the vehicle. No separate argument has been advanced regarding the opening of the baggie.

into the car was reasonable and that his observations at that point, along with the fluid nature of what was transpiring, constituted probable cause and exigent circumstances to search.

On that same date, defendant entered a plea of guilty to count two of the indictment. He was sentenced to three years of probation, upon service of weekend county jail time of 180 days. The court also imposed a number of conditions along with fines and penalties, none of which are at issue here.

Defendant appealed, challenging the denial of the motion to suppress on a number of grounds. More particularly, he argued that the warrantless search could neither be justified as incident to a valid arrest nor as having occurred pursuant to the consent, community caretaking, or automobile exceptions to the warrant requirement. Defendant also challenged his sentence. In the Appellate Division, the State waived all justifications for the search save one: the search incident to arrest exception as interpreted in *Belton.*

The Appellate Division reversed, *State v. Eckel,* 374 *N.J.Super.* 91, 863 *A.*2d 1044 (App.Div.2004), stating that "unless and until our Supreme Court *definitively* decides otherwise, *Belton* does not represent the law in New Jersey under the greater protections provided by our State Constitution ... and we decline to follow it." *Eckel, supra,* 374 *N.J.Super.* at 100, 863 *A.*2d 1044 (citation omitted). The panel concluded that because defendant was already in custody in the rear of the patrol car before the vehicle search took place, the interior of the vehicle was not under his control and the evidence seized should have been suppressed. *Id.* at 101, 863 *A.*2d 1044.[3]

We granted the State's petition for certification, 183 *N.J.* 214, 871 *A.*2d 92 (2005), limited to the single issued raised: whether the search was lawful under *Belton.* We also granted the motion

---

[3] The issue of defendant's sentence was not reached by the Appellate Division because the conviction was reversed.

of the Association of Criminal Defense Lawyers of New Jersey to appear as amicus curiae.

## II

The State argues that the Sanfillipo vehicle was properly searched as incident to defendant's arrest and that under *State v. Pierce*, 136 *N.J.* 184, 642 *A.*2d 947 (1994), *Belton* is applicable in New Jersey except in cases involving motor vehicle violations. Again, as in the Appellate Division, the State has declined to advance any other justification for the warrantless search.

Citing *Pierce, supra*, 136 *N.J.* 184, 642 *A.*2d 947, and *State v. Welsh*, 84 *N.J.* 346, 419 *A.*2d 1123 (1980), defendant counters that the warrantless search of the vehicle cannot be justified as incident to his arrest because, at the time it took place, he was secured in the back of the patrol car and was therefore no threat to the officers or the evidence. Put differently, defendant argues that *Belton's* contrary holding is not the law in New Jersey. Amicus, the Association of Criminal Defense Lawyers of New Jersey, support defendant's argument.

## III

We detailed the full history of the search incident to arrest exception to the warrant requirement under the Federal Constitution in *Pierce, supra*, 136 *N.J.* at 196–97, 642 *A.*2d 947. In brief, the source of the exception is dictum in *Weeks v. U.S.*, 232 *U.S.* 383, 34 *S.Ct.* 341, 58 *L.Ed.* 652 (1914), to the effect that law-enforcement officials could "search *the person* of the accused when legally arrested, to discover and seize the fruits or evidences of crime." *Id.* at 392, 34 *S.Ct.* at 344, 58 *L.Ed.* at 655 (emphasis added). In the years following *Weeks*, the search incident to arrest doctrine fluctuated in scope.[4] Eventually the so-called *Harris–Rabinowitz* rule developed, declaring that the exception

---

[4] *See, e.g., Carroll v. United States*, 267 *U.S.* 132, 158, 45 *S.Ct.* 280, 287, 69 *L.Ed.* 543, 553 (1925)(approving search after arrest for "whatever is found upon his person or in his control"); *Agnello v. United States*, 269 *U.S.* 20, 30, 46 *S.Ct.*

includes not only the person of defendant and the area within his reach, but also the entire area over which defendant has a possessory interest. *Pierce, supra,* 136 *N.J.* at 197, 642 *A.*2d 947 (citing *Chimel v. California,* 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685 (1969); 2 Wayne R. LaFave, *Search and Seizure* § 6.3(b) at 623–24 (2d ed.1987)); *see also Harris v. United States,* 331 *U.S.* 145, 154–55, 67 *S.Ct.* 1098, 1103, 91 *L.Ed.* 1399, 1408–09 (1947)(approving thorough search of four-room apartment incident to defendant's arrest therein for prior offense); *Trupiano v. United States,* 334 *U.S.* 699, 709, 68 *S.Ct.* 1229, 1234, 92 *L.Ed.* 1663, 1671 (1948)(disapproving seizure of items in plain view after entry to make arrest because of failure to secure and use search warrants); *United States v. Rabinowitz,* 339 *U.S.* 56, 63–66, 70 *S.Ct.* 430, 434–35, 94 *L.Ed.* 653, 658–60 (1950)(relying on *Harris, supra,* overruling *Trupiano, supra,* and upholding as reasonable thorough search of one-room office where arrest is made).

In 1969, the Supreme Court decided *Chimel v. California, supra,* 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685, reconciling fifty years of sometimes conflicting Fourth Amendment jurisprudence. In so doing, the Court overruled the *Harris–Rabinowitz* line of cases and restricted the constitutionally permissible scope of a search of a home incident to an arrest. *Chimel* involved the arrest of a coin-shop burglary suspect at his home by police armed with an arrest warrant but no search warrant. *Id.* at 753–54, 89 *S.Ct.* at 2035, 23 *L.Ed.*2d at 688. Over the defendant's objections, the officers conducted a complete search of the entire premises and seized various items later introduced at trial. *Ibid.* The California Supreme Court upheld the search under the Federal Constitution as incident to a valid arrest. *People v. Chimel,* 68

---

4, 5, 70 *L.Ed.* 145, 148 (1925)(approving search after arrest of the person and "the place where the arrest is made"); *Marron v. United States,* 275 *U.S.* 192, 199, 48 *S.Ct.* 74, 77, 72 *L.Ed.* 231, 238 (1927)(approving, after arrest for offense occurring on premises, power to search extending "to all parts of the premises used for the unlawful purpose"); *Go–Bart Importing Co. v. United States,* 282 *U.S.* 344, 358, 51 *S.Ct.* 153, 158, 75 *L.Ed.* 374, 383 (1931)(disapproving search of office in which defendants were arrested).

*Cal.*2d 436, 67 *Cal.Rptr.* 421, 439 *P.*2d 333, 337 (1968). The Supreme Court reversed, overruling both *Harris, supra,* and *Rabinowitz, supra,* declaring:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
>
> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.
>
> [*Chimel, supra,* 395 *U.S.* at 762–63, 89 *S.Ct.* at 2040, 23 *L.Ed.*2d at 694 (footnote omitted).]

The Supreme Court subsequently reaffirmed *Chimel's* dual rationales for the search incident to arrest exception. *See Knowles v. Iowa,* 525 *U.S.* 113, 116–17, 119 *S.Ct.* 484, 487, 142 *L.Ed.*2d 492, 498 (1998)(stating, "[i]n [*United States v. Robinson,* 414 *U.S.* 218, 94 *S.Ct.* 467, 38 *L.Ed.*2d 427 (1973) ], we noted the two historical rationales for the 'search incident to arrest' exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial"); *Cupp v. Murphy,* 412 *U.S.* 291, 295, 93 *S.Ct.* 2000, 2004, 36 *L.Ed.*2d 900, 906 (1973)("*Chimel* stands in a long line of cases recognizing an exception to the warrant requirement when a search is incident to a valid arrest. . . . The basis for this exception is that when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy incriminating evidence.").

Later, the Supreme Court applied *Chimel* to an automobile search in *Belton, supra,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.*2d

768. There, after a New York State trooper stopped a vehicle for speeding, he smelled the odor of burned marijuana and observed an envelope marked "Supergold" on the floor of the car that he suspected contained marijuana. *Id.* at 455–56, 101 *S.Ct.* at 2861–62, 69 *L.Ed.*2d at 772. He ordered the occupants out of the car and placed them under arrest for possession of marijuana. *Id.* at 456, 101 *S.Ct.* at 2862, 69 *L.Ed.*2d at 772. He patted them down, directed them to stand in separate areas and opened the envelope. *Ibid.* Finding marijuana, the trooper searched the occupants and the passenger compartment of the vehicle where he discovered cocaine in the zipped pocket of the defendant's jacket. *Ibid.* Defendant was indicted and later moved to suppress the cocaine. *Ibid.* The New York Court of Appeals invalidated the search, concluding that

[a] warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article.

[*People v. Belton*, 50 *N.Y.*2d 447, 429 *N.Y.S.*2d 574, 407 *N.E.*2d 420, 421 (1980).]

The Supreme Court reversed. Although stressing its re-affirmation of the fundamental principles of *Chimel,* the Court nevertheless accepted the notion that articles "inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" *Id.* at 460, 101 *S.Ct.* at 2864, 69 *L.Ed.*2d at 774–75 (quoting *Chimel, supra,* 395 *U.S.* at 763, 89 *S.Ct.* at 2040, 23 *L.Ed.*2d at 694). Over the dissents of Justices Brennan and Marshall, who declared that the opinion was not a reaffirmation but a rejection of *Chimel,* the Court broadly held:

[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile [and] . . . may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.

[*Id.* at 460, 101 *S.Ct.* at 2864, 69 *L.Ed.*2d at 775 (citing *Robinson, supra*, 414 *U.S.* 218, 94 *S.Ct.* 467, 38 *L.Ed.*2d 427 (1973)); *Draper v. United States*, 358 *U.S.* 307, 79 *S.Ct.* 329, 3 *L.Ed.*2d 327 (1959)(footnotes omitted).]

In *Thornton v. United States*, 541 *U.S.* 615, 124 *S.Ct.* 2127, 158 *L.Ed.*2d 905 (2004), the Supreme Court revisited *Belton*. There, an officer discovered that the defendant's license plates belonged to another car. *Id.* at 618, 124 *S.Ct.* at 2129, 158 *L.Ed.*2d at 911. Before he had a chance to pull the car over, defendant "drove into a parking lot, parked, and got out of the vehicle." *Ibid.* The officer approached, patted down, and questioned defendant who admitted to having narcotics, pulled out a bag of marijuana and crack cocaine, and handed it to the officer. *Ibid.* The officer arrested the defendant, handcuffed him, and placed him in his patrol car and then proceeded to search the defendant's vehicle, uncovering a handgun. *Ibid.* In denying the defendant's motion to suppress, the trial judge found the search valid pursuant to *Belton*. *Id.* at 618–19, 124 *S.Ct.* at 2129–30, 158 *L.Ed.*2d at 911–12. The Fourth Circuit affirmed. *Id.* at 619, 124 *S.Ct.* at 2130, 158 *L.Ed.*2d at 912.

The Supreme Court in *Thornton* upheld the vehicle search under *Belton*, affirming

[t]he need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.

[*Id.* at 622–23, 124 *S.Ct.* at 2132, 158 *L.Ed.*2d at 914.]

Applying that rule, the Court stated, "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." *Id.* at 623–24, 124 *S.Ct.* at 2132, 158 *L.Ed.*2d at 915. Several Justices pronounced their reservations regarding that application of *Belton*. Justice O'Connor concurred, expressing her "dissatisfaction with the state of the law in this area," declaring that

lower court decisions seem to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel v. California*. That erosion is a direct consequence of *Belton's* shaky foundation.

[*Id.* at 624–25, 124 *S.Ct.* at 2133, 158 *L.Ed.*2d at 915 (O'Connor, J., concurring).]

Justice Scalia, urging a return to *Harris–Rabinowitz*, also concurred, joined by Justice Ginsburg:

> When petitioner's car was searched in this case, he was neither in, nor anywhere near, the passenger compartment of his vehicle. Rather, he was handcuffed and secured in the back of the officer's squad car. The risk that he would nevertheless "grab a weapon or evidentiary ite[m]" from his car was remote in the extreme. The Court's effort to apply our current doctrine to this search stretches it beyond its breaking point, and for that reason I cannot join the Court's opinion.

[*Id.* at 625, 124 *S.Ct.* at 2133, 158 *L.Ed.*2d at 916 (Scalia, J., concurring).]

Those criticisms of *Belton* have been widely recapitulated in scholarly writings. In *Pierce,* we cited a number of them.[5] Since *Pierce* the drumbeat of scholarly opposition to *Belton* has re-

---

[5] *See* Jeffrey A. Carter, *Fourth Amendment—Of Cars, Containers and Confusion,* 72 *J.Crim. L. & Criminology* 1171, 1173, 1217–21 (1981) (characterizing *Belton* as "disappointing," the efficacy of its bright-line rule "questionable," and its legacy "confusion"); Catherine Hancock, *State Court Activism and Searches Incident to Arrest,* 68 *Va. L.Rev.* 1085, 1130–31 (1982) (observing that "[b]y the elimination of *Chimel's* case-by-case measure of grabbing areas * * * *Belton* dramatically lowered the level of Fourth Amendment protection afforded to motorists in almost every state"); Yale Kamisar, *The "Automobile Search" Cases: The Court Does Little to Clarify the "Labyrinth" of Judicial Uncertainty, in* 3 *The Supreme Court: Trends and Developments 1980–81* 96 (Jesse Chaper et al. eds., 1982) (arguing that "automobile exception" recognized in *Carroll, supra,* 267 *U.S.* at 147, 45 *S.Ct.* at 283, 69 *L.Ed.* at 548–49, and based on probable cause constituted preferable basis for authorizing warrantless search in *Belton* ); John Parker, *Robbins and Belton–Inconsistency and Confusion Continue to Reign Supreme in the Area of Warrantless Vehicle Searches,* 19 *Hous. L.Rev.* 527, 552 (1982) (arguing that "[r]easonableness and exigency have given way to predictability in *Belton* "); David S. Rudstein, *The Search of an Automobile Incident to an Arrest: An Analysis of New York v. Belton,* 67 *Marq. L.Rev.* 205, 232, 261 (1984) (reading *Belton* to allow car search even if arrestee was handcuffed and placed in squad car and urging reconsideration of *Belton* and return to rationale of *Chimel,* allowing search of vehicle and containers therein only if within potential control of arrestee); David M. Silk, *When Bright Lines Break Down: Limiting New York v. Belton,* 136 *U. Pa. L.Rev.* 281, 313 (1987) (urging that *Belton* be read and applied narrowly and not expanded beyond intended scope); Robert Stern, *Robbins v. California and New York v. Belton: The Supreme Court Opens Car Doors to Container Searches,* 31 *Am. U.L.Rev.* 291, 317 (1982) (describing *Belton* as subordinating privacy interests to bright-line rule and allowing warrantless searches of containers in automobile passenger compart-

mained constant. *See* 3 Wayne R. LaFave, *Search and Seizure* § 7.1(c) at 527 (4th ed.2004)(stating that "[o]n balance . . . there is good reason to be critical of the Court's work in *Belton* "); Leslie A. Lunney, *The (Inevitably Arbitrary) Placement of Bright Lines: Belton and Its Progeny*, 79 *Tul. L.Rev.* 365, 399 (2004)(acknowledging *Belton* has "weak relation to its supporting *Chimel* rationales"); Carson Emmons, Note, *Arizona v. Gant: An Argument for Tossing Belton and All Its Bastard Kin*, 36 *Ariz. St. L.J.* 1067, 1091 (2004)(arguing *Belton* and *Thornton* created legal fiction that "decrees that officer safety and preservation of evidence are in jeopardy when, in fact, they are not because the suspect is outside of the vehicle at the time of encounter and handcuffed in back of a squad car at the time of search"); Myron Moskovitz, *A Rule in Search of a Reason: An Empirical Reexamination of Chimel and Belton*, 2002 *Wis. L.Rev.* 657, 676 (2002)(arguing *Belton's* "generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might reach in order to grab a weapon or evidentiary item is—at least in general—false"); Tim Thomas, Note, *Belton is Not Welcome: Idaho's Rejection and Subsequent Adoption of the Belton Rule in State v. Charpentier*, 35 *Idaho L.Rev.* 125 (1998)(stating, "[t]he problem with the *Belton* rule is that when the defendant is handcuffed and in the back of the police car, the rationale for conducting a search no longer applies").

Some states have simply followed *Belton*. *See generally Stout v. State*, 320 *Ark.* 552, 898 *S.W.*2d 457 (1995); *State v. Waller*, 223 *Conn.* 283, 612 *A.*2d 1189 (1992); *State v. Charpentier*, 131 *Idaho* 649, 962 *P.*2d 1033 (1998); *State v. Sanders*, 312 *N.W.*2d 534 (Iowa 1981); *State v. Tognotti*, 663 *N.W.*2d 642 (N.D.2003); *State v.*

ments incident to arrest of driver or occupants); *The Supreme Court 1980 Term,* 95 *Harv. L.Rev.* 93, 260 (1981) (noting that "the Court has turned its back on the logic of its earlier decision in *Chimel* * * *, which restricted police searches incident to arrest to the arrestee's immediate area of control").

*Murrell,* 94 *Ohio St.*3d 489, 764 *N.E.*2d 986 (2002); *State v. Rice,* 327 *N.W.*2d 128 (S.D.1982); *State v. Fry,* 131 *Wis.*2d 153, 388 *N.W.*2d 565 (1986). However, a number have declined to do so based upon their own constitutional provisions. *See Commonwealth v. Toole,* 389 *Mass.* 159, 448 *N.E.*2d 1264, 1267 (1983)(holding invalid search of truck's passenger compartment incident to arrest under Massachusetts law where defendant was "already arrested, . . . handcuffed, and . . . in the custody of two State troopers while the search was conducted"); *Camacho v. State,* 119 *Nev.* 395, 75 *P.*3d 370, 374 (2003)(stating, "[w]e . . . elect to follow our previous cases where we rejected *Belton's* reasoning and followed the earlier United States Supreme Court case of *Chimel v. California* ")(footnote omitted); *State v. Arredondo,* 123 *N.M.* 628, 944 *P.*2d 276, 284–85 (Ct.App.1997), *overruled on other grounds by State v. Steinzig,* 127 *N.M.* 752, 987 *P.*2d 409 (1999)(holding, "New Mexico Constitution requires a fact-specific inquiry" rather than *Belton's* "bright-line rule"); *People v. Blasich,* 73 *N.Y.*2d 673, 543 *N.Y.S.*2d 40, 541 *N.E.*2d 40, 43 (1989)(stating, "[t]his court has not adopted [*Belton's* ] brightline approach to automobile searches incident to arrest as a matter of State constitutional law"); *State v. Kirsch,* 69 *Or.App.* 418, 686 *P.*2d 446 (1984)(stating, "*Belton* is not the law of Oregon"); *Commonwealth v. White,* 543 *Pa.* 45, 669 *A.*2d 896, 902 (1995)(stating, "this court . . . has struck a different balance than has the United States Supreme Court . . . there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody"); *Vasquez v. State,* 990 *P.*2d 476, 489 (Wyo.1999)(stating Wyoming Constitution "requires a search be reasonable under all circumstances," resulting in "a narrower application than *Belton* "). That is the backdrop for our inquiry.

## IV

### A.

New Jersey's traditional approach to the search incident to arrest exception parallels *Chimel.* In *Welsh, supra,* 84 *N.J.* 346,

419 *A*.2d 1123, a case decided less than one year before *Belton*, this Court applied a *Chimel* analysis to decide the validity of a search incident to arrest in the motor vehicle context under the Federal Constitution. *Id.* at 353–54, 419 *A*.2d 1123. There, we ruled that "once the occupant has been removed from the vehicle, placed under custodial arrest and seated in a police car, there is no danger that the arrestee might reach into his own vehicle to gain possession of a weapon or destructible evidence," thus obviating resort to the search incident to arrest exception to the warrant requirement. *State v. Alston*, 88 *N.J.* 211, n. 15 235, 440 *A*.2d 1311 (1981)(citing *Welsh, supra*, 84 *N.J.* at 355, 419 *A*.2d 1123).

*Alston*, decided several months after *Belton*, did not require us to reach the *Belton* question because the automobile search at issue was valid under the automobile exception. *Ibid.* We acknowledged, however, that *Welsh* would have been decided differently under *Belton* and expressly reserved decision on *Belton*, stating, "we leave to future consideration the question of the continued viability of our analysis of the scope of the *Chimel* exception as expressed in *Welsh.*" *Ibid.*

We later considered the applicability of *Belton* under the New Jersey constitution in *Pierce, supra*, 136 *N.J.* 184, 642 *A*.2d 947. There, the driver of a motor vehicle was pulled over and subsequently arrested, handcuffed, and placed in the patrol car for driving while his license was suspended. *Id.* at 187–88, 642 *A*.2d 947. Additionally, both passengers were removed from the car, patted down, and secured behind the vehicle by "back-up officers." *Ibid.* The arresting officer then searched the interior of the vehicle and found a stolen revolver and cocaine. *Ibid.* The trial judge found the search to be valid and citing *Belton*, the Appellate Division affirmed. *Id.* at 188, 642 *A*.2d 947.

We granted certification. In ruling that *Belton* does not apply to warrantless arrests for motor-vehicle offenses, we observed in *Pierce* that the two *Chimel* justifications for a search incident to arrest (officer safety and avoidance of the destruction of evidence) have little relevance when the arrest is for a routine motor vehicle

violation. *Id.* at 210, 642 *A.2d* 947. We further acknowledged that "motorists arrested for traffic offenses almost invariably are removed from the vehicle and secured," and "[w]hen an arrestee ... has been handcuffed and placed in the patrol car ... the officer's justification for searching the vehicle and the passenger's clothing and containers is minimal." *Id.* at 210, 642 *A.2d* 947. Therefore, we held that

in the context of arrests for motor-vehicle violations, the bright-line *Belton* holding extends the *Chimel* rule beyond the logical limits of its principle. . . . We reject not the rationale of *Chimel,* but *Belton's* automatic application of *Chimel* to authorize vehicular searches following all arrests for motor-vehicle offenses.

[*Id.* at 210–11, 642 *A.2d* 947.]

We acknowledged

the virtue of simple, straightforward rules to guide police officers in applying Fourth Amendment doctrine. Nevertheless, we are convinced that automatic application of the *Belton* bright-line rule to authorize vehicular searches incident to all traffic arrests poses too great a threat to rights guaranteed to New Jersey's citizens by their State Constitution, and that that threat to fundamental rights outweighs any incidental benefit that might accrue to law enforcement because of the simplicity and predictability of the *Belton* rule.

[*Id.* at 215, 642 *A.2d* 947.]

We saved for another day the question whether *Belton* or *Chimel,* as adopted in *Welsh,* applies to arrests other than those occurring as a result of minor motor vehicle offenses.

### B.

We now determine that issue.[6] Article I, Paragraph 7 of the New Jersey Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

---

[6] The State's reliance on our 2002 decision in *State v. Goodwin,* 173 *N.J.* 583, 803 *A.2d* 102 (2002), as a declaration of our adoption of *Belton* is misplaced. The reference to *Belton* in that opinion was pure dictum and did not address the fundamental issue of the conflict between *Welsh* and *Belton* that we left open in *Pierce.*

[*N.J. Const.* art. I, ¶ 7.]

Although that paragraph is almost identical to the text of the Fourth Amendment to the Federal Constitution, we have not hesitated in the past to afford our citizens greater protection against unreasonable searches and seizures under Article I, Paragraph 7 than would be the case under its federal counterpart. *See State v. Cooke*, 163 *N.J.* 657, 666, 751 *A.*2d 92 (2000) (declining to adopt conclusion of Supreme Court in *Pennsylvania v. Labron*, 518 *U.S.* 938, 116 *S.Ct.* 2485, 135 *L.Ed.*2d 1031 (1996), that dispensed with the need for exigent circumstances under automobile exception); *Pierce, supra,* 136 *N.J.* at 208–09, 642 *A.*2d 947 (refusing to adopt blanket rule that would have permitted warrantless automobile searches incident to motor vehicle arrests); *State v. Hempele*, 120 *N.J.* 182, 215, 576 *A.*2d 793 (1990) (finding privacy interest in curbside garbage); *State v. Novembrino,* 105 *N.J.* 95, 158, 519 *A.*2d 820 (1987) (declining to find good-faith exception to exclusionary rule); *State v. Hunt,* 91 *N.J.* 338, 348, 450 *A.*2d 952 (1982) (finding privacy interest in phone billing records); *State v. Johnson*, 68 *N.J.* 349, 353–54, 346 *A.*2d 66 (1975) (finding heavy burden to show validity of non-custodial consent to search). Indeed, it is

an established principle of our federalist system that state constitutions may be a source of "individual liberties more expansive than those conferred by the Federal Constitution." *PruneYard Shopping Center v. Robins,* 447 *U.S.* 74, 81, 100 *S.Ct.* 2035, 2040, 64 *L.Ed.*2d 741, 752 (1980); *see Oregon v. Hass,* 420 *U.S.* 714, 718, 95 *S.Ct.* 1215, 1218–19, 43 *L.Ed.*2d 570, 575 (1975); *State v. Gilmore,* 103 *N.J.* 508, 522, 511 *A.*2d 1150 (1986); "Symposium: The Emergence of State Constitutional Law," 63 *Tex. L.Rev.* 959 (1985); Pollock, "State Constitutions as Separate Sources of Fundamental Rights," 35 *Rutgers L.Rev.* 707 (1983); "Developments in the Law— The Interpretation of State Constitutional Rights," 95 *Harv. L.Rev.* 1324 (1982); Brennan, "State Constitutions and the Protection of Individual Rights," 90 *Harv. L.Rev.* 489 (1977); Note, "The New Jersey Supreme Court's Interpretation and Application of the State Constitution," 15 *Rutgers L.J.* 491 (1984).

[*Novembrino, supra,* 105 *N.J.* at 144–45, 519 *A.*2d 820.]

Moreover, as we have said, the United States Supreme Court interpretations of the Federal Constitution establish not the ceiling but only "the floor of minimum constitutional protection." *Gilmore, supra,* 103 *N.J.* at 524, 511 *A.*2d 1150.

Our conclusion regarding whether to tether ourselves to federal jurisprudence in this matter is influenced simultaneously by a number of considerations. Initially, we return to the text of our constitution: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *N.J. Const.* art. I, ¶ 7. It is against that clear recognition of the privacy interests of our citizens that a specific warrantless search is to be judged. Clearly, the search of an automobile is an invasion of privacy, *Cooke, supra,* 163 *N.J.* at 670, 751 *A.*2d 92, and the fact of an arrest does not render that invasion less substantial. Without doubt, we have acknowledged that there is a somewhat lesser expectation of privacy in an automobile than in a home or office, *State v. Colvin,* 123 *N.J.* 428, 429, 587 *A.*2d 1278 (1991), thus allowing for distinct analyses of searches in those settings. However, we have never agreed that the word "automobile" is a "talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 *U.S.* 443, 461, 91 *S.Ct.* 2022, 2035, 29 *L.Ed.*2d 564, 580 (1971). Thus, a warrantless search of an automobile will violate our constitution unless it falls squarely within a known exception to the warrant requirement.

In this matter our concern is the search incident to arrest exception. As we have indicated, both our prior case law and federal case law have recognized the specific contours of that exception: it is invocable to ensure police safety or to avoid the destruction of evidence. *See Chimel, supra,* 395 *U.S.* at 762–63, 89 *S.Ct.* 2034, 2040, 23 *L.Ed.*2d 685, 694; *Welsh, supra,* 84 *N.J.* at 355, 419 *A.*2d 1123 (stating, "[t]he relevant facts, then, appear to be those which disclose what places the person under arrest presently could reach at the time the arrest is undertaken and how likely it is that he would attempt resistance or escape or destruction of evidence"); *Pierce, supra,* 136 *N.J.* at 211, 642 *A.*2d 947 (stating, "[w]e reject not the rationale of *Chimel,* but *Belton's* automatic application of *Chimel* to authorize vehicular searches following all arrests for motor-vehicle offenses").

However, in *Belton,* and later in *Thornton,* the Supreme Court altered *Chimel,* establishing a bright-line rule that essentially validates every automobile search upon the occupant's arrest, regardless of whether the occupant has the capacity to injure the police or destroy evidence. In concluding as it did, *Belton* detached itself from the theoretical underpinnings that initially animated the search incident to arrest exception. Unmoored as it is from *Chimel* and established Fourth Amendment jurisprudence, all that is left in *Belton* is the benefit to police of a so-called bright line rule. *See, Belton, supra,* 453 *U.S.* at 464, 101 *S.Ct.* at 2865, 69 *L.Ed.*2d at 777 (Brennan, J., dissenting). Without question, along with protecting privacy and "regulat[ing] the distribution of power between the people and the government," guiding the police is one distinct level on which the Fourth Amendment operates. *The Supreme Court, 1980 Term,* 95 *Harv. L.Rev.* 93, 258 (1981). However, it cannot, standing alone, support an exception to the warrant requirement. By focusing solely on procedure and writing out of the exception the two *Chimel* justifications, the Supreme Court in *Belton* reached a result that is detached from established Fourth Amendment jurisprudence.

We decline to adopt *Belton* and its progeny because to do so would require us to accept a theoretically rootless doctrine that would erode the rights guaranteed to our own citizens by Article I, Paragraph 7 of our constitution—the right to be free from unreasonable searches and seizures. To us, a warrantless search of an automobile based not on probable cause but solely on the arrest of a person unable to endanger the police or destroy evidence cannot be justified under any exception to the warrant requirement and is unreasonable.

We do not view Article I, Paragraph 7 as a procedural matter but as a reaffirmation of the privacy rights guaranteed to our citizens and of our duty as judges to secure them. So viewed, the *Belton* rationale simply does not pass muster. That is not to suggest that bright lines are not salutary, only that they cannot be the sole justification for a warrantless search. Indeed, a bright-

line that remains true to an exception's roots is a worthy consideration. In that connection, one scholar has observed:

> If any bright line rule had been necessary to resolve the issue in *Belton*, it would have been the opposite of the rule that the Court announced .... [O]ccupants almost invariably are removed before an automobile is searched; and once they have been removed, there is no longer much chance that they can secure weapons from the automobile or destroy evidence there.

[Albert W. Alschuler, *Bright Line Fever and the Fourth Amendment*, 45 *U. Pitt. L.Rev.* 227, 274 (1984).]

That is the line we draw here. Once the occupant of a vehicle has been arrested, removed and secured elsewhere, the considerations informing the search incident to arrest exception are absent and the exception is inapplicable. We thus return to *Chimel* and to *Welsh* and declare their reasoning to be the critical path to the application of the search incident to arrest exception under Article I, Paragraph 7 of our constitution. That, in turn, answers the open issue in *Pierce*.

Obviously, where a defendant has been arrested but has not been removed and secured, the court will be required to determine, on a case-by-case basis whether he or she was in a position to compromise police safety or to carry out the destruction of evidence, thus justifying resort to the search incident to arrest exception.

One final note, we emphasize that we do not diverge lightly from federal constitutional interpretation. However, as Justice Clifford so eloquently put our relationship with our federal counterpart:

> although that Court may be a polestar that guides us as we navigate the New Jersey Constitution, we bear ultimate responsibility for the safe passage of our ship. Our eyes must not be so fixed on that star that we risk the welfare of our passengers on the shoals of constitutional doctrine. In interpreting the New Jersey Constitution, we must look in front of us as well as above us.

[*Hempele, supra,* 120 *N.J.* at 196, 576 *A.*2d 793.]

In charting a course distinct from *Belton,* that is what we have done.

## V

That is not the end of the inquiry. The trial judge did not base her decision on the search incident to arrest exception but on theories including consent, plain view, and the automobile exception to the warrant requirement. Those exceptions, which defendant challenged on appeal, were not reached by the appellate panel because of the State's refusal to address them, apparently in order to force an adjudication of the *Belton* issue. In any event, the merits of the trial judge's decision have never been tested against the arguments advanced by defendant on appeal. We therefore return the matter to the Appellate Division to consider the remaining unresolved issues.

## VI

For the reasons to which we have adverted, and notwithstanding the Appellate Division's entirely correct disposition of the *Belton* issue, the case is remanded for consideration of outstanding issues.

*For remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.