888 A.2d 1278

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND
CROSS–RESPONDENT, v. JOHNEL D. DUNLAP, DEFEN-
DANT–RESPONDENT AND CROSS–APPELLANT.

Argued September 13, 2005—Decided January 10, 2006.

*Maura K. Tully*, Deputy Attorney General, argued the cause for appellant and cross respondent (*Peter C. Harvey*, Attorney General of New Jersey, attorney).

*Linda Mehling*, Assistant Deputy Public Defender, argued the cause for respondent and cross appellant (*Yvonne Smith Segars*, Public Defender, attorney).

*Sharon Bittner Kean*, argued the cause for amicus curiae, Association of Criminal Defense Lawyers of New Jersey.

PER CURIAM.

On March 22, 2001, Linell Griffin, the mother of Tiaa Griffin, discovered a loaded nine-millimeter handgun and a large quantity of heroin and marijuana in Tiaa's bedroom in the family's Franklin Township home. She informed the police and gave them permission to search Tiaa's room. During the search, the police noticed a "jail picture" on Tiaa's wall. Mrs. Griffin identified the person in the picture as "Soup."

One of the officers contacted the New Brunswick Police Department and learned that "Soup" was defendant, Johnel D. "Supreme" Dunlap. Defendant was on parole and was being actively investigated by the police who believed he was dealing drugs

again. The police also were told that defendant carried a gun and transported narcotics, using at least three different vehicles to make deliveries.

The police went to the store where Tiaa worked and placed her under arrest for narcotics and weapons violations as a result of the loaded handgun and heroin found in her room. She stated that the drugs and gun belonged to defendant and agreed to cooperate.

Two officers drove Tiaa home. During the ride, she told them that if defendant came to her house, he probably was going to have heroin on him; that she had seen him with guns in the past; and that one of the vehicles driven by defendant, a green Hyundai, was owned by someone with a "Hispanic name."

At the urging of the police, who had obtained telephonic authorization for a consensual telephone interception, Tiaa called defendant's cell phone and asked him to come over because her mother had found the gun and drugs in her bedroom. Defendant told Tiaa to "get everything out" of the house and to put it in her car and that he would be there "in like five minutes."

Defendant arrived at the Griffin house about fifteen to twenty minutes later in the green Hyundai. He parked in front of the house and remained in the car for about thirty seconds. When defendant got out of the car and began walking toward the house, two police officers tackled him. He was arrested and secured on the Griffins' front lawn. At the time there were between eight and ten officers present at the scene. Using keys found on defendant's person, the officers unlocked and opened the driver's side door of the Hyundai.

When the officers opened the door, they recognized the smell of burnt marijuana. They then proceeded to search the entire passenger compartment and the glove box and opened a bundle wrapped in magazine paper in the air conditioning vent near the steering wheel. The officer who saw the bundle later testified that in city areas it is common for heroin to be packaged and

wrapped in ripped magazine pages. Further, the package was similar to the one found in Tiaa's bedroom.

At that same time, Tiaa, who was in the house being guarded by an officer, informed him that there was a "trap" inside the car to the left of the driver's seat. The officers searching the car were unable to open the trap using Tiaa's instructions. Defendant then was removed from the area and Tiaa was brought outside to open the trap herself. Inside the trap, the police found a loaded .357 caliber handgun with a defaced serial number and 873 individual packets of heroin packaged for sale.

The trial judge denied defendant's motion to suppress the heroin and handgun found in the car, holding that no warrant was required because the search was both incident to defendant's lawful arrest, and within the automobile exception to the warrant requirement. Defendant was indicted for possession of the heroin and the .357 caliber handgun found in the car as well as for possession of the marijuana and the nine-millimeter handgun found in Tiaa's room.

Tried to a jury on twelve counts, defendant was convicted of all the crimes related to the items found in the car: second-degree possession of heroin with intent to distribute, *N.J.S.A.* 2C:35–5a(1) (count one); third-degree possession of heroin, *N.J.S.A.* 2C:35–10a(1) (count two); third-degree possession of a firearm without the requisite permit to carry it, *N.J.S.A.* 2C:39–7b (count nine); fourth-degree possession of a defaced firearm, *N.J.S.A.* 2C:39–3d (count ten); second-degree possession of a firearm while possessing a controlled dangerous substance (CDS) with intent to distribute, *N.J.S.A.* 2C:39–4.1a (count eleven); and second-degree possession of a firearm having been previously convicted of a crime, *N.J.S.A.* 2C:39–7b (count twelve). Defendant was acquitted of all the crimes related to the items in Tiaa's room: third-degree possession of marijuana with intent to distribute, *N.J.S.A.* 2C:35–5a(1) (count three); fourth-degree possession of marijuana, *N.J.S.A.* 2C:35–10a(3) (count four); third-degree possession of a handgun without the requisite permit to carry it, *N.J.S.A.* 2C:39–

5b (count five); fourth-degree possession of a defaced firearm, *N.J.S.A.* 2C:39–3d (count six); and second-degree possession of a firearm while possessing CDS with intent to distribute, *N.J.S.A.* 2C:39–4.1a (count seven). The state dismissed one count, second-degree possession of a firearm, having previously been convicted of a crime, *N.J.S.A.* 2C:39–7b (count eight), because defendant was not found to have possessed the gun that charge referenced.

On the basis of defendant's prior drug convictions, the State moved for mandatory extended term sentencing pursuant to *N.J.S.A.* 2C:43–6f, on count one. The judge granted the State's motion and sentenced defendant to eighteen years with nine years of parole ineligibility on the two drug convictions, which were merged. The judge also imposed a ten-year consecutive term, with five years of parole ineligibility on the merged convictions related to the .357 caliber handgun.

Defendant appealed and, in an unpublished opinion, the Appellate Division reversed. The panel, rejecting the United States Supreme Court's contrary conclusion in *New York v. Belton*, 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.*2d 768 (1981), determined that the essential underpinnings of the search incident to arrest exception to the warrant requirement (assuring the safety of police and the avoidance of the destruction of evidence) are necessarily absent in a case in which a defendant has been secured at a distance from his or her automobile. In addition, the panel determined that although the police clearly had probable cause to search the car, exigent circumstances did not justify the warrantless intrusion, thus obviating resort to the automobile exception to the warrant requirement. Accordingly, the panel reversed the trial judge's denial of defendant's suppression motion.

We granted the states petition for certification and defendant's protective cross-petition.[1]  182 *N.J.* 428, 866 *A.*2d 985 (2005).

---

[1] On the cross-petition, defendant sought to preserve sentencing claims that were not addressed by the Appellate Division because the judgment of conviction was reversed.

I

The State argues that the search of defendant's vehicle was lawful as incident to his arrest and that *Belton* applies in New Jersey except in cases involving motor vehicle violations. Alternatively, the State contends that the search was lawful under the automobile exception to the warrant requirement because probable cause and exigency existed at the time it took place.

Defendant counters that the warrantless search of the vehicle was unconstitutional because no exception to the warrant requirement justified it. With respect to the search incident to arrest exception, defendant argues that because he was in no position to gain access to the interior of his vehicle that exception is inapplicable. In terms of the automobile exception, defendant contends that neither probable cause nor exigent circumstances existed at the time of the search thus obviating resort to that exception.

II

We turn first to the search incident to arrest exception to the warrant requirement. We fully explored that issue in a companion case decided today *State v. Eckel,* 185 *N.J.* 523, 888 *A.*2d 1266 (2005). There, we declined to adopt the United States Supreme Court's interpretation of the Federal Constitution in *New York v. Belton,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L. Ed.*2d 768 (1981), which effectively validated every vehicle search based on the arrest of a recent occupant. In *Eckel,* we declared that under Article I, Paragraph 7 of the New Jersey Constitution the search incident to arrest exception to the warrant requirement is circumscribed by the purposes for which it was limned: police safety and the avoidance of the destruction of evidence. *Eckel, supra,* 185 *N.J.* at 524, 888 *A.*2d 1266. Thus, we held that our constitution prohibits the application of that exception to cases in which the occupant of a vehicle has been removed and secured elsewhere. That ruling is fully applicable to the facts of this case and parallels the conclusion reached by the Appellate Division here: that the search incident to arrest exception cannot be invoked where a

defendant has no capacity to reach the interior of the vehicle to destroy evidence or to endanger the police. Because this defendant was removed and secured, the Appellate Division properly ruled that the vehicle from which he alighted could not be searched incident to his arrest.

III

We turn next to the State's contention that the automobile exception justified the warrantless intrusion. It is well-established that the automobile exception depends on the satisfaction of two requirements: the existence of probable cause and exigent circumstances, and that the determination regarding those elements must be made on a case-by-case basis. *See State v. Cooke*, 163 *N.J.* 657, 671, 751 *A.*2d 92 (2000); Peter G. Verniero, *New Jersey Search–and–Seizure Law: A Recent Perspective*, 36 *Seton Hall L. Rev.* 45 (2005). Regarding probable cause, the Appellate Division concluded:

> [B]ased on the entire circumstances as revealed on March 22, 2001, including Tiaa's information, there was probable cause to believe that guns or drugs or both would be found in the vehicle. Probable cause does not require certainty; it is sufficient if the police have a "well-grounded suspicion" that evidence of a crime will be found in the car. *Cooke, supra,* 163 *N.J.* at 671, 751 *A.*2d 92; *State v. Wilson,* 178 *N.J.* 7, 13–14, 833 *A.*2d 1087 (2003). We agree with the motion judge that probable cause existed.

After rejecting defendant's claim that, under the circumstances, the police were required to obtain an "anticipatory warrant," the panel addressed exigent circumstances:

> [W]e conclude that exigent circumstances did not exist to permit a warrantless search under the automobile exception. General and broad pronouncements are of little help; attention to the facts of a case provide a surer guide. Thus, in *Cooke,* the Court found exigent circumstances based on the presence of the following factors, any one of which alone would have been insufficient:
>
>> It would have been impracticable to require Officer Harmon to leave his surveillance post to stand guard over the Escort; the element of surprise was lost when defendant was arrested in the presence of Miles; third parties had knowledge of the location of the Escort and were aware that defendant stored drugs in either the Escort or Hyundai; those same parties could have attempted to remove or destroy the drugs in the time necessary to obtain the warrant; and

other parties in this known drug-trafficking area could have removed the car itself.

> [*Cooke, supra,* 163 *N.J.* at 675, 751 *A.*2d 92.]

Indeed, the Court went on to observe that "exigency would not have existed in the present case if the officer had not observed or reasonably believed that third parties were capable of destroying or removing the evidence contained in the car." *Id.* at 676, 751 *A.*2d 92.

Applying the *Cooke* standards, the panel painstakingly detailed the facts in this case:

> Here, the Hyundai was not parked in an open area known for drug trafficking but was, rather, parked on the street in a residential neighborhood. Nor is there any evidence that third persons—including the car's registered owner—had any knowledge of defendant's destination or, more importantly, that he had been arrested. In fact, defendant's trip to Tiaa's house was rapid and unanticipated (on both sides), coming in response to the taped phone call in which defendant said he would be there "in like five minutes." In short, there was no basis here upon which to conclude that a third person might come and destroy or remove evidence in the car.
>
> In addition, we reject the State's argument that "it would have been unduly burdensome and unreasonably restrictive to require the police to post a guard and repair to the courthouse for a warrant," quoting *State v. Colvin,* 123 *N.J.* 428, 435, 587 *A.*2d 1278 (1991) (quoting *United States v. Bradshaw,* 515 *F.*2d 360, 363 (D.C.Cir.1975)). There were at least ten officers present on the evening in question and even assuming that some were needed for other duties in connection with defendant's arrest and the on-going investigation, the State did not establish that an insufficient number would have been left to guard the car. To say that the late hour made access to a judge difficult or unpracticable, is to ignore the procedures in place for emergent duty judges in every vicinage and the existence, since 1984, of the telephonic warrant procedure. *R.* 3:5-3(b). Indeed, it is not without significance that the investigators here had time to call the prosecutor's office at about 10:00 pm and obtain verbal authorization for the consensual recording of defendant's conversation with Tiaa.

The panel concluded:

> To permit these circumstances to constitute exigent circumstances would, in our view, allow the exception—in this case the automobile exception—to swallow up the rule, which requires a search warrant. It would be difficult to conjure up circumstances more conducive to obtaining a warrant for an automobile search. With the facts in *Cooke* providing a beacon, we do not find exigent circumstances in this case. It must be emphasized that we do not bar the police from searching a vehicle where probable cause exists but there is no exigency; we only require that they obtain a warrant.

We have carefully reviewed this record in light of the State's claims and have determined that the decision of the Appellate Division is fully supported in every respect by the record and is

legally unexceptionable. In reaching that conclusion we underscore the availability of the telephonic warrant and the option of vehicle impoundment as among the alternatives available to the ten police officers on the scene.

One final note. Nothing in this opinion should be viewed as a retrenchment from the well-established principles governing the automobile exception to the warrant requirement. *State v. Cooke, supra,* 163 *N.J.* at 670–71, 751 *A.*2d 92. The standards remain the same: probable cause and exigent circumstances, each of which to be determined on a case-by-case basis. Here, the unique facts, particularly the presence of ten officers, fully justified the Appellate Division's conclusion that exigency was absent. Different facts, such as a roadside stop effectuated by only one or two officers, would likely have changed the calculus. Police safety and the preservation of evidence remain the preeminent determinants of exigency.

IV

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.