**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2848-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH C. FRANCIS,

     Defendant-Appellant.

_____

Submitted April 29, 2020 – Decided May 14. 2020

Before Judges Fuentes and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 17-11-0199.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele Erica Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Frank Muroski, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from a November 2, 2016 order denying his suppression motion. We affirm, substantially for the reasons outlined in Judge James M. Blaney's concise, thoughtful oral opinion.

We briefly summarize the facts leading to defendant's conviction and sentence. On April 25, 2016, Officer Francis Falcicchio was working in the Parole Fugitive Unit and was assigned to the United States Marshals Service Regional Fugitive Task Forces. That day, he executed an arrest warrant for defendant's son, Eric. Prior to this arrest, another member of the Task Forces team recollected there was a Federal immigration "warrant" for defendant, based on defendant's illegal reentry into the United States.

When law enforcement went to arrest defendant's son, Officer Falcicchio encountered an unknown adult male, later identified as defendant, in the living room. At first, defendant was reluctant to disclose his identity to officers and he gave Officer Falcicchio an alias. Defendant also stated he did not have identification. According to Officer Falcicchio, defendant was "inconsistent with his identifiers, you know, date of birth, address, so on." Because defendant initially refused to identify himself, he was asked to place his fingers on a fingerprint scanner. Only then did defendant disclose his identity. Defendant also admitted he had been deported previously and did not have a passport.

Accordingly, defendant was arrested. Since he was wearing only underwear at the time of his arrest, Officer Falcicchio retrieved a pair of jeans near the defendant so he could put them on. Defendant was the only adult, other than his son, in the area where the jeans were located.

Before handing the pants to defendant, the officer patted them down and felt items inside the pants pockets. The officer removed those items before handing the jeans to defendant. In one of defendant's pants pockets, Officer Falcicchio found a Florida driver's license with defendant's picture on it, but it reflected another person's name. In another pocket, the officer found a Jamaican ID card, with defendant's name on it. Underneath defendant's jeans, the officer also discovered a stack of paperwork, with a list of names and personal identifiers. The officer confirmed the paperwork "had people's names and dates of birth and social security numbers and addresses, so it appeared to be something."

Officer Falcicchio, defendant and his son testified at the suppression hearing. Judge Blaney credited the testimony of Officer Falcicchio over that of defendant and his son, Eric. The judge characterized defendant's testimony as "misleading" and "contradictory," finding defendant "vacillated from one set of

3

facts to another" and that he "contradicted his son's testimony with respect to how this incident actually went down."

Based on the "totality of the circumstances," Judge Blaney found that prior to defendant's arrest, law enforcement became aware there was "some kind of warrant from immigration for the defendant." Subsequently, officers were lawfully in defendant's residence to execute a warrant for his son. Further, the judge concluded that once defendant lied to officers about his identity, he was separately subject to arrest for falsely identifying himself. Additionally, the judge determined the search of defendant's jeans incident to his arrest was proper. Lastly, the judge found the paperwork with personal identifiers was inadvertently observed in plain view after officers became aware defendant was not legally in this country. Based on these findings, Judge Blaney denied defendant's motion to suppress the false government document and the paperwork found during the incident.

On appeal, defendant raises the following arguments:

POINT I

THE OFFICERS' PRESENCE IN THE HOME BEYOND THAT WHICH WAS NECESSARY TO EXECUTE AN UNRELATED ARREST WARRANT, AS WELL AS THE WARRANTLESS SEARCHES THAT FOLLOWED, NECESSITATE SUPPRESSION OF THE EVIDENCE.

A-2848-18T2

A.  The Officers' Prolonged Presence in the Home Constituted an Illegal Detention, From Which They Obtained Tainted Evidence.

B   The Officer's Mere Assertion that an Out-of-Court Declarant Told Him that an Immigration Detainer Was issued Deprived [Defendant] of His Fundamental Right to Due Process of Law.

C.  The Arrest Was Predicated Upon Evidence Retrieved During a Warrantless Search of Pants Pockets and Use of a Mobile Fingerprint Scanning Device. As Such, the Court's Finding that the Search Was Incident to a Lawful Arrest Was Inherently Flawed.

D.  The Court Erred in Finding that the Plain View Exception Was Applicable, Because the Officers Were Not Lawfully in the Viewing Area, and There Is No Basis to Conclude that the Nature of the Incriminating Evidence was Immediately Apparent to the Officer.

After carefully reviewing the record, we are satisfied these arguments lack merit. Appellate courts reviewing a grant or denial of a motion to suppress must defer to a trial court's factual findings so long as those findings are supported by sufficient evidence in the record. State v. Gamble, 218 N.J. 412, 424 (2014); State v. Elders, 192 N.J. 224, 243 (2007). We defer to those findings of fact because they "are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964). An appellate court should

5

disregard those findings only when a trial court's findings of fact are clearly mistaken and "the interests of justice demand intervention and correction." Id. at 162. However, we review a trial court's legal conclusions de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

"Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Minitee, 210 N.J. 307, 318 (2012). Searches and seizures conducted without a warrant, "particularly in a home, are presumptively unreasonable." State v. Edmonds, 211 N.J. 117, 129 (2012) (quoting State v. Bolte, 115 N.J. 579, 585 (1989)). The State has the burden of proving by a preponderance of the evidence that such searches and seizures are "justified by one of the 'well-delineated exceptions' to the warrant requirement." State v. Shaw, 213 N.J. 398, 409 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)). Two such exceptions to the warrant requirement include the plain view doctrine and the search-incident-to-arrest doctrine.

To lawfully seize an item in plain view, a three-prong test must be satisfied: (1) the officer must have been lawfully in the viewing area; (2) the

officer must have discovered the evidence "inadvertently;"[1] and (3) the criminality of the item must have been immediately apparent to the officer. State v. Earls, 214 N.J. 564, 592 (2013) (quoting State v. Mann, 203 N.J. 328, 341 (2010)). Additionally, pursuant to the search-incident-to-arrest doctrine, when an officer effectuates an arrest, he or she may search the "arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969); see also State v. Eckel, 185 N.J. 523, 535 (2006) ("New Jersey's traditional approach to [a] search incident to arrest parallels Chimel.")

The police did not have an arrest warrant for defendant when they executed his son's arrest warrant, but, as Judge Blaney noted, law enforcement knew of an outstanding federal immigration detainer for defendant based on his unlawful re-entry into the United States. As defendant falsely identified himself before admitting his real name and conceded he returned to the United States illegally, we are satisfied Judge Blaney correctly found defendant was properly

---

[1] In State v. Gonzales, 227 N.J. 77 (2016), our Supreme Court embraced the United States Supreme Court's decision in Horton v. California, 496 U.S. 128 (1990), and eliminated the "inadvertence" prong. Gonzales, 227 N.J. at 82. However, Gonzales applies only prospectively. Ibid. In this instance, the search was conducted before Gonzales was decided on November 15, 2016.

arrested.  Likewise, we perceive no basis to disturb Judge Blaney's finding that defendant's clothing was lawfully searched incident to his arrest and the paperwork under defendant's jeans was properly seized after it was discovered in plain view.  The record amply supports these findings.

Given our standard of review, we have no basis to second-guess Judge Blaney's denial of defendant's motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION