**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3573-24

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JAVANTE J. DORISME,

     Defendant-Respondent.

_____

Argued December 16, 2025 – Decided January 8, 2026

Before Judges Perez Friscia and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 24-12-1259.

Michele C. Buckley, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the brief).

PER CURIAM

On leave granted, plaintiff the State of New Jersey appeals from the June 2, 2025 Law Division order granting defendant Javante J. Dorisme's motion to suppress physical evidence seized during a warrantless search incident to arrest following a motor vehicle stop. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

We summarize the salient facts and procedural history, which are largely undisputed. On July 1, 2024, defendant was a passenger in a black Hyundai Sonata driven by Gene Howard. After defendant was arrested on an outstanding traffic warrant and handcuffed while standing behind the vehicle, police officer Ryan O'Grady retrieved defendant's bag from the vehicle, searched it, and recovered a loaded Smith and Wesson handgun with a large capacity magazine.

On December 18, a grand jury charged defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and fourth-degree unlawful possession of a large capacity magazine, N.J.S.A. 2C: 39-3(j). On March 10, 2025, defendant moved to suppress the physical evidence seized pursuant to the warrantless search. The court conducted an evidentiary hearing on May 23, 2025, at which O'Grady testified.

A-3573-24

O'Grady testified that he was a police officer with the Township of Union Police Department (UPD) and assigned to the quality-of-life unit. The unit patrolled neighborhoods, pursued "active warrants," and was assigned "to . . . burglary details." On July 1, 2024, O'Grady responded to the motor vehicle stop Sergeant Michael DePinho conducted because the vehicle had no license plates. After DePinho initiated the stop, the vehicle failed to pull over immediately and instead drove and stopped at a nearby convenience store. O'Grady arrived at 10:30 p.m., which was "[a]pproximately two minutes" after DePinho conducted the stop. The officers were aware that UPD had recently received a "call about an attempted motor vehicle burglary in the area." O'Grady learned from DePinho that "it took him a while to pull the car over." After O'Grady approached the vehicle, he "saw that there w[ere] no door handles on the vehicle" doors and defendant was not wearing a seatbelt.

After observing defendant not wearing a seatbelt, O'Grady requested his identification. Defendant advised he had identification but then showed it to O'Grady "[from] his cell phone." O'Grady observed there was a black bag underneath defendant's legs, which he appeared to be "concealing." Because the vehicle had no license plates, there were no door handles on the vehicle, defendant appeared to be concealing a bag, a call had been received regarding

3

an attempted burglary, and defendant had his identification on his cell phone, O'Grady testified he requested defendant exit the vehicle.

After O'Grady asked defendant what they were doing, defendant advised that Howard was his brother, and they intended to go back to Newark after getting gas. O'Grady advised defendant a canine was going to sniff the vehicle. Thereafter, Howard separately told O'Grady they were coming from Hillside and that defendant was his "friend," which O'Grady interpreted as contradicting defendant's statement. According to O'Grady, Howard later stated defendant was his "friend[,] but brother." Howard responded to O'Grady's inquiry about the vehicle's missing license plates by explaining he had just taken off the plates and was going to put them back on. O'Grady testified Howard had explained to DePinho that he had taken the plates off because there was a dangling screw.

At the hearing, O'Grady identified his body worn camera (BWC) footage from the motor vehicle stop, which the State played for the court and admitted into evidence. The BWC footage demonstrated that Howard responded, when was asked why he did not pull over immediately and instead stopped in the convenience store parking lot, that he "did[ no]t want to stop in the middle of the road." The BWC footage evidenced Howard's consent to the officer's search of his vehicle and statement that the bag in the vehicle was not his. Defendant

advised O'Grady that the bag was his but denied the officers consent to search it.

A search of the vehicle revealed a box of tools. O'Grady explained that based on his training and experience "a lot of burglaries [involve] tools." He testified that no other items were discovered in the vehicle.

After O'Grady's testimony, the parties presented their arguments. Defendant raised two points supporting his motion to suppress. First, he contended that the officer's request of defendant's identification was impermissible and tainted the subsequent arrest. Second, he argued that the search and seizure of the bag incident to arrest was unlawful because there was no danger to officers or the destruction of evidence as defendant had been removed from the vehicle and was handcuffed before the bag was retrieved. The State opposed, arguing O'Grady had probable cause to request defendant's identification and that the search "was lawful [as] a search incident to arrest." The State withdrew its other warrantless search exception arguments regarding defendant's bag. The court reserved decision.

On June 2, 2025, the trial court issued a written opinion and order granting defendant's motion. The court found "O'Grady's testimony to be credible as his assertion of the facts was consistent with the [BWC] footage submitted into

5

evidence." In addressing whether O'Grady had lawfully asked defendant for his identification, the court stated that "there was insufficient evidence presented to make a determination as to whether such a violation of the [F]ourth Amendment occurred." The court suppressed the evidence seized following the search incident to arrest because "defendant was not in possession of his bag at the time of his arrest." The court stated, "the bag in the instant case [was] not within . . . defendant's immediate control because he was removed from the vehicle and separated from his bag." It reasoned there were no safety concerns because "defendant was located at the trunk of the vehicle, where he was not only arrested and handcuffed but physically restrained in the grip of another officer." The court found "the essential underpinning of the search incident to arrest exception to the warrant requirement are absent in this case, as . . . defendant was arrested and secured and was not a threat to the officers' safety or to the preservation of the evidence."

On appeal, the State raises the following contentions:

POINT I

THE TRIAL COURT'S ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS MUST BE REVERSED AS IT WAS AN ABUSE OF DISCRETION AND CONTRARY TO APPLICABLE LAW.

6

A. THE TRIAL COURT ERRONEOUSLY FOUND THAT THERE WAS INSUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE OFFICER REQUESTING DEFENDANT'S IDENTIFICATION.

B. THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS AS THE SEARCH OF DEFENDANT'S BAG WAS A LAWFUL SEARCH INCIDENT TO ARREST.

II.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We should disturb the trial court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Boone, 232 N.J. 417, 426 (2017) (quoting Elders, 192 N.J. at 244). "Video-recorded evidence is reviewed under the same standard." State v. Hagans, 233 N.J. 30, 38 (2018); State v. S.S., 229 N.J. 360, 381 (2017) (stating a court's factual finding based on a video recording should only be disturbed "when factual findings are so clearly mistaken—so wide of the mark—that the interests of justice demand intervention"). "An appellate court 'should give deference to those findings of the trial judge which are substantially

7

influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). However, we do not defer to the trial court's legal interpretations. State v. Gartrell, 256 N.J. 241, 250 (2024).

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). These protections "impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions." State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Maristany, 133 N.J. 299, 304 (1993)). "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017).

A warrantless search is "presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Wilson, 178 N.J. 7, 12 (2003) (citing State v. Cooke, 163 N.J. 657, 664 (2000)). One of those exceptions is a search incident to an arrest. State v. Torres, 253 N.J. 485, 503

(2023); State v. Dangerfield, 171 N.J. 446, 455 (2002). That exception applies only when the underlying arrest is lawful. Torres, 253 N.J. at 503. Further, the State has the burden of proving the reasonableness of a warrantless arrest. State v. Brown, 205 N.J. 133, 144-45 (2011); see also Payton v. New York, 445 U.S. 573, 585 (1980).

Our Supreme Court has held "the search incident to arrest exception to the warrant requirement was [recognized] for two specific purposes—the protection of the police and the preservation of evidence . . . ." State v. Eckel, 185 N.J. 523, 524 (2006). To that end, the exception allows "the arresting officer to search" both "the arrestee's person and the area 'within his immediate control'" to prevent the arrestee from obtaining a weapon or destroying evidence. Chimel v. California, 395 U.S. 752, 763 (1969). While questions abound about the permissible geographical area beyond the person of an arrestee that may be lawfully searched, "no doubt has been expressed as to the unqualified authority of the arresting authority to search the person of the arrestee." United States v. Robinson, 414 U.S. 218, 225 (1973).

Indeed, "[t]he authority to search the person incident to a lawful custodial arrest," although "based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular

arrest situation that weapons or evidence would in fact be found upon the person of the suspect."  Id. at 235.

While a search incident to a lawful arrest is permissible, the "exception . . . is not limitless in terms of purpose or scope."  Dangerfield, 171 N.J. at 461.  First and foremost, ordinarily, "[a] search incident to an arrest must be contemporaneous with that arrest."  State v. Bradley, 291 N.J. Super. 501, 510 (App. Div. 1996).  Further, as with all searches, a search incident to arrest must be reasonable.  Fundamentally, "[w]hether a search is reasonable under the Fourth Amendment 'depends on [the totality] of the circumstances surrounding the search . . . and the nature of the search . . . itself.'"  State v. O'Hagen, 189 N.J. 140, 149 (2007) (quoting Skinner v. Ry. Lab. Execs.' Ass'n, 489 U.S. 602, 619 (1989)); c.f. Arizona v. Gant, 556 U.S. 332, 344 (2009).  The United States Supreme Court in Gant held police officers were not authorized to conduct "a vehicle search incident to a recent occupant's arrest after the arrestee ha[d] been secured and [could not] access the interior of the vehicle" but noted vehicle stops present unique circumstances to justify a search incident to a lawful arrest when there is a "reasonable basis to believe the vehicle contains relevant evidence" related to the crime of arrest.  556 U.S at 343.

A-3573-24

III.

The State contends the court abused its discretion in granting defendant's motion to suppress because it was contrary to applicable law. Specifically, the State contends there was sufficient evidence to support the officer's request for defendant's identification and that the search of his bag was lawful pursuant to the search incident to arrest exception.

We first address the court's finding that there was insufficient evidence to determine whether O'Grady lawfully requested defendant's identification. We note that the court found O'Grady's testimony credible after having the opportunity to observe him during the evidentiary hearing. O'Grady testified that he comported with his standard practice of approaching the vehicle as a backup officer and that after he observed defendant had no "seatbelt on, . . . [he] requested [defendant's] identification."[1] O'Grady acknowledged he did not issue defendant a summons but explained that officers "do[ no]t always . . . issue" a seatbelt summons "just because [a defendant is] not wearing" one.

---

[1] N.J.S.A. 39:3-76.2f provides that it is unlawful for "each driver and front seat passenger of a passenger automobile operated on a street or highway in this State shall wear a properly adjusted and fastened safety seat belt system." See R. 3:3-1(b)(2).

We part ways with the court's determination that insufficient evidence supported O'Grady's request for defendant's identification upon observing he was not wearing a seatbelt in violation of New Jersey's motor vehicle law. O'Grady arrived at the stop approximately two minutes after the vehicle stopped in the convenience store. The fact that DePinho did not advise O'Grady about the seatbelt and whether he "intended to investigate the seatbelt" does not negate O'Grady's separate observation and probable cause to request defendant's identification. "[A] demand for a passenger's identification . . . is permitted when police have a basis for focusing on the passenger." State v. Boston, 469 N.J. Super. 223, 259-60 (App. Div. 2021) (quoting State v. Sloane, 193 N.J. 423, 438-39 (2008)) (determining that a National Crime Information Center check of passenger may be lawful "when there was a basis for police to focus on the passenger"). "In assessing whether probable cause exists, courts 'must look to the totality of the circumstances and view those circumstances . . . from the standpoint of an objectively reasonable police officer.'" State v. Diaz, 470 N.J. Super. 495, 529 (App. Div. 2022) (quoting State v. Gibson, 218 N.J. 277, 293 (2014)). "[C]ourts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154

A-3573-24

N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). Because O'Grady observed defendant in the front passenger seat without a seatbelt close in time to the stop, he had sufficient probable cause to believe defendant had not been wearing a seatbelt in violation of N.J.S.A. 39:3-76.2f. Thus, O'Grady was permitted to ask for identification in determining whether to issue a summons.

In addressing the State's search incident to arrest argument, we again recognize the facts are largely undisputed. O'Grady testified that defendant was "outside the vehicle" and near "the bumper of the car" when the vehicle was searched. After O'Grady "ran the information on" defendant's name and it was learned defendant had "an active [traffic] warrant," defendant was arrested and "put . . . in handcuffs." Defendant was also "pat[ted] down" after his arrest. Only after defendant was handcuffed and near the rear bumper of the vehicle did O'Grady open the partially ajar passenger door and retrieve "[t]he bag that [defendant] claimed." O'Grady then placed the bag on the "back trunk" and "searched the bag maybe a foot from" defendant.

It is well-recognized that during a search incident to an arrest, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use" and "it is entirely

13

reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." Eckel, 185 N.J. at 530 (quoting Chimel, 395 U.S. at 762-63). A reviewing court must "determine, on a case-by-case basis whether [a defendant] was in a position to compromise police safety or to carry out the destruction of evidence, thus justifying resort to the search incident to arrest exception." Id. at 541; see also State v. Oyenusi, 387 N.J. Super. 146, 155 (App. Div. 2006).

Based on the specific facts here, we conclude the warrantless search of defendant's bag was not lawful under the search incident to arrest exception and, therefore, the court correctly suppressed the physical evidence. Relevantly, defendant was outside the vehicle near its rear bumper, away from the interior of the vehicle where the bag was located, separated from the bag for almost twenty minutes, handcuffed, and surrounded by multiple officers. Under these specific facts, defendant's bag was no longer within his "immediate control," and he presented no threat to safety of officers or the destruction of evidence. O'Grady's retrieval of the bag from the vehicle and placement of it on the trunk near defendant does not place the bag within defendant's control for purposes of the search incident to arrest exception.

For these reasons, we conclude the court did not abuse its discretion in determining the warrantless search of defendant's bag was invalid under the search incident to arrest exception and the seized handgun and large capacity magazine were properly suppressed.

Affirmed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3573-24