# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2976-24

STATE OF NEW JERSEY
IN THE INTEREST OF K.W.,
a juvenile.[1]

_____

Submitted May 5, 2026 – Decided May 14, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FJ-07-0710-25.

Jennifer N. Sellitti, Public Defender, attorney for appellant K.W. (Susan L. Romeo, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent State of New Jersey (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to protect the identity of the juvenile involved in this case. See R. 1:38-3(d).

Defendant K.W. appeals from the Family Part adjudication of delinquency entered after a plea for conduct which, if committed by an adult, would constitute: second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of prohibited ammunition (hollow-nose bullets), N.J.S.A. 2C:39-3(f)(1); and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(A). K.W. challenges the trial court's denial of his motion to suppress. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

We summarize the facts and procedural history from the record. On November 25, 2024, following his arrest, the State filed a juvenile delinquency complaint against K.W. for weapons-related and resisting arrest charges. K.W. was sixteen years of age at the time he committed the offenses.

K.W. moved to suppress the evidence seized after his arrest and the court held oral argument. During argument, K.W. asserted suppression was warranted because he was arrested without probable cause, noting he was not a target of the underlying criminal investigation. He highlighted the State did not charge him with any earlier offense. He moved for an evidentiary hearing, alleging

there were material issues of fact in dispute surrounding the lawfulness of the seizure, which the court granted.

On February 11, 2025, the court held an evidentiary hearing. The State presented Officer Brandon J. Cunha as a witness, who testified that on November 25, 2024, he was working for the New Jersey State Police (NJSP) Auto Theft Taskforce. Cunha was with other officers conducting surveillance of two target individuals in Newark. The officers observed the two target individuals and a third person, later identified as K.W., enter a restaurant. Cunha entered the restaurant to arrest the two target individuals. Cunha had knowledge that the target individuals previously had exhibited "dangerous behavior," which caused him to approach the restaurant arrest "with a heightened sense towards caution." Upon entry, he observed one target sitting on a bench next to K.W. Cunha directed the target and K.W. not to move. After K.W. moved his hands upwards, Cunha "tried to pin [K.W.'s] hands to [his] bod[y] as [he] w[as] seated."

Cunha specifically observed K.W.'s proximity to one of the targets believed to be dangerous. Cunha noted K.W. "started pulling [his] hands away, . . . so [Cunha] tried to bring him to the ground to control him." Cunha attempted to "sweep his leg out," but K.W. "tr[ied] to crawl for the door." Other

3

officers interceded to restrain K.W. but he "kept pulling his hands out" and "reaching for his waistband." They "[e]ventually . . . detain[ed] . . . and handcuffed him." After officers "conducted a frisk," they "found a handgun."

Cunha maintained K.W. ignored requests to stop resisting and that his behavior of reaching for his waistband, in particular, raised safety concerns. Based on his training and experience, in addition to his knowledge about K.W.'s companions' prior "dangerous behavior," Cunha believed there was a heightened danger. After identifying the body-worn camera (BWC) footage taken of the incident, the State played the recording for the court.

On cross-examination, Cunha reiterated that he specifically directed the target individuals and K.W. not to move. However, because K.W. immediately moved "his hands up," Cunha "grabbed his hands" "to bring them to his chest." He testified the environment was "tight . . . for safety" and K.W. was pulling away. Cunha explained that at that point, he was detaining K.W. for failure to comply with his command and for safety reasons. Cunha acknowledged the two target individuals were placed under arrest and handcuffed, again highlighting the investigation of those individuals raised "concerns about safety" and the potential they could be "armed."

A-2976-24

Cunha on redirect examination maintained that he only attempted to "pin [K.W.]'s hands" after K.W. moved, contrary to Cunha's instruction otherwise. Regarding K.W.'s actions, Cunha again described that K.W. tried moving to the door and kept reaching for his waistband. He described being aware that the restaurant was "a small space."

On February 28, 2025, the court denied K.W.'s motion to suppress the evidence seized, finding the totality of the circumstances demonstrated he was lawfully stopped and frisked. The court determined the weapon was lawfully seized as the product of a lawful search. The court provided a thorough recitation of relevant precedent in determining the officers "use[d] minimally intrusive investigative techniques reasonably available to them to d[e]fuse a potentially dangerous situation" and the totality of facts "gave rise to reasonable suspicion." Further, the court noted the importance of the "sequence of events," determining the officers had appropriately frisked K.W. for their own safety and had valid reason to detain K.W. based on his actions and that he was "potentially armed."

Following plea discussions between the State and K.W.'s attorney, K.W. accepted a plea offer from the State. On April 10, 2025, K.W. pleaded guilty to all three charges. The court entered an order of disposition in accordance with

5

the plea agreement, sentencing K.W. to an eighteen-month term of detention and requiring him to provide a biological sample for DNA, pursuant to N.J.S.A. 53:1-20.20.

On appeal, K.W. raises the following contentions:

POINT I

THE COURT'S DENIAL OF THE SUPPRESSION MOTION MUST BE REVERSED BECAUSE BOTH THE TESTIMONIAL AND VIDEO EVIDENCE SHOW THAT K.W. WAS UNLAWFULLY SUBJECTED TO, AT MINIMUM, AN UNLAWFUL DETENTION THE MOMENT DETECTIVE CUNHA REACHED HIM, DESPITE CUNHA'S ACKNOWLEDGEMENT THAT K.W. WAS NOT A TARGET OF THE INVESTIGATION AND DESPITE THE FACT THAT THE POLICE HAD NO REASONABLE SUSPICION THAT K.W. WAS ENGAGED IN CRIMINAL ACTIVITY[.]

1. K.W. Was Subjected To A Detention That Was Unlawful From Its Inception Because The Police Officer Had An Articulated, Premeditated Plan To "Grab" K.W., Despite The Indisputable Absence Of Either Particularized Suspicion Of Wrongdoing Or Probable Cause To Arrest.

2. The Gun Must Be Excluded As The Fruit Of The Poisonous Tree Because K.W.'s Frightened Response To The Officers' Storming Into The Small Takeaway Shop And Grabbing Him Did Not Dissipate The Taint of the Illegal Arrest That Preceded The Search And Seizure Of The Gun.

## II.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record."  State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)).  We will disturb the trial court's findings "'only if they are so clearly mistaken "that the interests of justice demand intervention and correction."'"  State v. Boone, 232 N.J. 417, 426 (2017) (quoting Elders, 192 N.J. at 244).  "Video-recorded evidence is reviewed under the same standard." State v. Hagans, 233 N.J. 30, 38 (2018); see State v. S.S., 229 N.J. 360, 381 (2017) (stating a court's factual finding based on a video recording should only be disturbed "when factual findings are so clearly mistaken—so wide of the mark—that the interests of justice demand intervention").

"An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  However, we do not defer to the trial court's legal interpretations. State v. Gartrell, 256 N.J. 241, 250 (2024).

A-2976-24

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)); U.S. Const. amend. XIV; N.J. Const. art. I, ¶ 7. These protections "impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions." State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Maristany, 133 N.J. 299, 304 (1993)).

Our Supreme Court has explained, "In escalating order of intrusiveness upon a citizen's rights, three categories of encounters with police have been identified by the courts: (1) field inquiry; (2) investigative detention; and (3) arrest." State v. Rosario, 229 N.J. 263, 271 (2017). "A field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer." Ibid. "The test of a field inquiry is 'whether [a] defendant, under all of the attendant circumstances, reasonably believed he could walk away without answering any of [the officer's] questions.'" Id. at 271-72 (alterations in original) (quoting State v. Maryland, 167 N.J. 471, 483 (2001)).

A-2976-24

The Supreme Court has further defined a field inquiry as "the least intrusive" form of police encounter, "occur[ring] when a police officer approaches an individual and asks 'if [the person] is willing to answer some questions.'" State v. Pineiro, 181 N.J. 13, 20 (2004) (second alteration in original) (quoting State v. Nishina, 175 N.J. 502, 510 (2003)). "A field inquiry is permissible so long as the questions '[are] not harassing, overbearing, or accusatory in nature.'" Ibid. (alteration in original) (quoting Nishina, 175 N.J. at 510).

Unlike a field inquiry, an investigatory stop, also known as a Terry[2] stop, "is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter falls short of a formal arrest." State v. Adubato, 420 N.J. 167, 177 (App. Div. 2011); see also State v. Stovall, 170 N.J. 346, 356-57 (2002); Terry, 392 U.S. at 19. Reasonable suspicion "requires 'some minimal level of objective justification for making the stop.'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (quoting Nishina, 175 N.J. at 511). "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

A-2976-24

in, or was about to engage in, criminal activity.'"  Rosario, 229 N.J. at 272 (quoting Stovall, 170 N.J. at 356); see also State v. Chisum, 236 N.J. 530, 545 (2019).

"An arrest—the most significant type of seizure by police—requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one."  Ibid.  "For probable cause to arrest, there must be probable cause to believe that a crime has been committed and 'that the person sought to be arrested committed the offense.'" State v. Chippero, 201 N.J. 14, 28 (2009) (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).  "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Pinson, 461 N.J. Super. 536, 549 (App. Div. 2019) (alterations in original) (quoting State v. Moore, 181 N.J. 40, 46 (2004)).

"[A] warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement."  State v. Wilson, 178 N.J. 7, 12 (2003) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)).  One of those exceptions is a search incident to an arrest.  State v. Torres, 253 N.J. 485,

503-04 (2023). That exception applies only when the underlying arrest is lawful. Torres, 253 N.J. at 504. Further, the State has the burden of proving the reasonableness of a warrantless arrest. State v. Brown, 205 N.J. 133, 144-45 (2011); see also Payton v. New York, 445 U.S. 573, 585 (1980). Our Supreme Court has held "the search incident to arrest exception to the warrant requirement was [recognized] for two specific purposes—the protection of the police and the preservation of evidence." State v. Eckel, 185 N.J. 523, 524 (2006).

Further, as with all searches, a search incident to arrest must be reasonable. Fundamentally, "[w]hether a search is reasonable under the Fourth Amendment 'depends on [the totality] of the circumstances surrounding the search . . . and the nature of the search . . . itself.'" State v. O'Hagen, 189 N.J. 140, 149 (2007) (quoting Skinner v. Ry. Lab. Execs.' Ass'n, 489 U.S. 602, 619 (1989)); cf. Arizona v. Gant, 556 U.S. 332, 344 (2009).

III.

K.W. contends reversal is warranted because the court erroneously denied his motion to suppress. He argues that at a minimum he was subject to an "unlawful detention." Specifically, K.W. argues the "court erred when it found that the reasonable suspicion required for an investigative detention did not

11

begin until K.W. reacted to the police actions." After a review of the record, we disagree.

K.W. asserts that when the officers entered the restaurant, they had no reasonable and articulable suspicion that he was engaged in any criminal activity and therefore his detention was unlawful. He asserts that once Cunha "grabb[ed]" K.W.'s hands, it "was certainly not a field inquiry" and "constituted an investigative detention." Relatedly, Cunha credibly testified that based on the investigation, he went into the "store to arrest the other two individuals . . . [they] had been investigating" and K.W. was not a target. We, therefore, agree with K.W.'s assertion that upon entering the restaurant Cunha did not have a reasonable suspicion to conduct an investigative detention of K.W. However, our inquiry does not end there.

The record demonstrates K.W.'s actions after Cunha entered the restaurant gave rise to reasonable and articulable suspicion to justify detention. As found by the court, Cunha credibly testified that he went into the restaurant to arrest two targets that were known to previously have weapons. Once in the confined space of the establishment, which had civilians present, Cunha saw the potentially armed target sitting close to K.W. on a bench. Cunha immediately instructed the target and K.W. not to move and observed K.W. instead moved

12

his hands up, ignoring the command.  See Chimel v. California, 395 U.S. 752, 763 (1969) (explaining "it is reasonable for the arresting officer to search . . . the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule").  Cunha established that once K.W. disobeyed his command not to move, while sitting next to the target, based on "the totality of the circumstances . . . [he] had a reasonable suspicion."  State v. Alessi, 240 N.J. 501, 518 (2020).

The court's determinations that Cunha acted reasonably in attempting to restrain K.W. for safety reasons and in detaining him, are supported by substantial credible evidence.  Stated another way, Cunha had a reasonable and articulable suspicion for K.W.'s investigative detention based upon what occurred after entering the restaurant, telling K.W. not to move, and observing K.W. move his hands while next to the target.

We are also unpersuaded by K.W.'s argument that Cunha admitted during the evidentiary hearing that he intended to arrest all three individuals, the targets and K.W.  Cunha explained multiple times that the officers intended to arrest the two targets.  K.W. was not known to the officers nor "one of [their] targets," and once Cunha thereafter "grabbed" K.W., it was to detain him.  His statement, during cross-examination, that upon going into the restaurant they intended to

"grab the three individuals . . . witnessed" does not equate to admission of his intent to arrest K.W. Notably, as K.W. acknowledges, "police had a right to conduct a field inquiry [of K.W.] at th[e] moment" of entering the restaurant to investigate the targets. Cunha testified specifically that when entering the restaurant, the purpose was to arrest the two targets and not K.W.

We next address K.W.'s assertion regarding his arrest after Cunha tried to restrain him. K.W.'s actions of trying to escape out the door, disobeying further instructions, resisting detention, and reaching for his waistband multiple times gave rise to probable cause to arrest him. Thus, the discovery of the handgun and bullets after K.W. was handcuffed and patted down were lawfully seized incident to his arrest. A review of the BWC footage supports the court's denial of K.W.'s motion to suppress.

We also note, even assuming K.W.'s detention was unlawful, once K.W. refused to abide by Cunha's command not to move, resisted arrest, and continued to try to reach into his waistband in the restaurant with civilians present, "the taint from the unlawful conduct [wa]s sufficiently purged." State v. Caronna, 469 N.J. Super. 462, 501 (App. Div. 2021); see State v. Crawley, 187 N.J. 440, 455 (2006) ("For compelling public safety reasons, the resisting arrest, eluding, and escape statutes and interpretive case law require that a defendant submit to

14

an illegal detention and that he take his challenge to court."). Our Supreme Court has explained that "[t]hough ordinarily [courts] apply the exclusionary rule to the fruits of an unlawful stop, [courts] will not exclude evidence sufficiently attenuated from the taint of the stop." Alessi, 240 N.J. at 524.

In determining whether seized evidence is sufficiently attenuated from a police officer's unlawful action, courts consider three factors: "(1) 'the temporal proximity' between the illegal conduct and the challenged evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy of the official misconduct.'" State v. Shaw, 213 N.J. 398, 415 (2012) (quoting Brown v. Illinois, 422 U.S. 590, 603-04 (1975)). While undeniably mere seconds elapsed between Cunha's attempt to restrain K.W.'s hands and the detention, the intervening circumstances of K.W.'s resistance and grabbing at his waistband, which Cunha testified that "based on [his] training and experience[,] . . . [i]s a common place to hide weapons," supports sufficient attenuating circumstances for his arrest and the seizure. For these reasons, we discern no reason to disturb the court's denial of K.W.'s motion to suppress.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

15